1

2

3

4

5

6                             IN THE UNITED STATES DISTRICT COURT

7

8                           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10    ALPI INTERNATIONAL, LTD.,                          No. C 12-03050 WHA

11                Plaintiff,

12        v.                                             **ORDER DENYING MOTION
                                                         FOR JUDGMENT ON THE
13    AD-LINE INDUSTRIES, INC.,                          PLEADINGS**

14                Defendant.

15    _____/

16            In this copyright action involving stuffed toys, defendant moves for judgment on the

17    pleadings.  For the reasons explained below, defendant's motion is **DENIED**.

18                                          **STATEMENT**

19            Plaintiff ALPI International, Ltd. ("Alpi"), produces and sells soft foam and molded

20    plastic toys known as "stress relievers."  These squeezable toys come in a variety of shapes, and

21    can be branded with corporate logos.  Defendant Ad-Line Industries, Inc. ("Ad-Line") is in the

22    same business.

23            Alpi contends that Ad-Line has copied several of its toy designs.  Specifically, Alpi

24    alleges that Ad-Line has produced virtually identical versions of Alpi's line of copyrighted

25    chicken, dog, penguin, cat, cow, dolphin, killer whale, ladybug, policeman, and seal stress

26    relievers.  Ad-Line moves for judgment on the pleadings, arguing that Alpi's designs are not

27    copyrightable as a matter of law, and that even if they are, its designs do not infringe as a matter

28    of law.

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    The photographs of the works included as exhibits to plaintiff's complaint are low quality

2    and difficult to analyze comprehensively.  Prior to oral argument, an order issued requesting that

3    the parties bring exemplars of the original and allegedly infringing works so that they could be

4    reviewed during oral argument made part of the record.  The intent was to save both parties time

5    and expense by efficiently supplementing the record early on.

6    This effort was foiled, however, by the parties themselves.  Plaintiff's proffered bag of its

7    own exemplars had at least one of defendant's toys mixed in.  Although it possibly was an

8    innocent mistake, it prevented the Court from receiving a verifiable set of exemplars from

9    plaintiff.  Defendant, for its part, was unwilling to confirm which of plaintiff's exemplars were

10   produced by defendant due to the presence of a logo on some of the exemplars.  Nor did

11   defendant bring a complete set of exemplars of its own.  As a result, the Court has not conducted

12   a review of the physical embodiments.  This motion will be denied on the papers.

13                                       **ANALYSIS**

14   Because the motions are functionally identical, the same standard of review is applicable

15   to a motion under Rule 12(c) as a motion under Rule 12(b).  *Dworkin v. Hustler Magazine Inc.*,

16   867 F.2d 1188, 1192 (9th Cir. 1989).  "[T]he allegations of the non-moving party must be

17   accepted as true . . . .  Judgment on the pleadings is proper when the moving party clearly

18   establishes on the face of the pleadings that no material issue of fact remains to be resolved and

19   that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner and*

20   *Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

21   **1.    COPYRIGHTABILITY OF ALPI'S WORKS.**

22   Ad-Line first contends that Alpi's squeeze toys are not copyrightable as a matter of law.

23   Ad-Line employs three closely-related arguments in support of this position:  (1) the toys

24   comprise only generic ideas; (2) there are so few ways of instantiating the toys that their

25   underlying ideas merge with their expression; and, (3) the expressive elements of the toys are

26   uncopyrightable scenes a faire.  However framed, Ad-Line's argument is unpersuasive.

27   As a starting point, it is clear that stuffed toy animals in general are subject to copyright.

28   *Kamar Intern., Inc. v. Russ Berrie and Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981).  Stuffed toys

depicting commonplace animals are on the lower end of the spectrum of creativity since animals of one species tend to look alike. However, for copyright protection to attach "the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) (citation omitted). "Anyone can copyright anything, if he adds something original to its expression." *Kamar*, 657 F.2d at 1061.

The undersigned judge does not agree with Ad-Line that a cow "must be white with black spots." Please go to a farm. There you will see all-white cows, all-brown cows, all-black cows, and brown-and-white spotted cows. A toy cow might be pink.

This variation, however, does not necessarily equate to creativity. Aspects such as color and the presence of horns on a cow are stock features that can be thought of as uncopyrightable scenes a faire. But there are not so few of these features that the idea of a stuffed cow merges with its expression. As our court of appeals has explained, "[a]n artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal" in the minimally creative way necessary to garner copyright protection. *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003).

Other than being white with black spots, Ad-Line does not explain what a perfectly generic cow looks like. Nor is there any evidence that Alpi slavishly copied its cow design from a prior creative work.

This order concludes that Alpi's humble heifer meets the low bar for copyrightability — at least on the current record. So too do Alpi's other designs at issue in this action. Possibly, on a more complete record with proper exemplars, this conclusion could change.

Defendant's reliance on *Aliotti v. R. Dakin & Co.*, 831 F.2d 898,(9th Cir. 1987), at oral argument and in its moving papers is misplaced. *Aliotti* held that "[n]o copyright protection may be afforded to the idea of producing stuffed dinosaur toys or to elements of expression that necessarily follow from the idea of such dolls." *Id.* at 901. Our court of appeals did not hold, however, that the stuffed dinosaur toys at issue in *Aliotti* — which bore common dinosaur

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    features — were un-copyrightable.  The presence of standard features was instead an element of

2    the infringement analysis.

3            Ad-Line also contended at oral argument that under the merger doctrine the idea and the

4    expression of the squeeze toys became inseparable.  Here, Ad-Line compared plaintiff's

5    squeezable killer whale with the jeweled bee pin in *Herbert Rosenthal Jewelry Corp. v.*

6    *Kalpakian*, 446 F.2d 738 (9th Cir. 1971).

7            Once again, Ad-Line misreads the our court of appeals.  In *Herbert Rosenthal*, the

8    plaintiff argued that the copyright on its jeweled bee pin rendered the defendant's entire line of

9    jeweled bee pin designs infringing.  *Id.* at 740.  Our court of appeals applied the concept of

10   merger, but not in the manner that Ad-Line suggests.  In *Herbert Rosenthal*, the court concluded

11   that even if there had been copying, on the record before it there was "no greater similarity

12   between the pins of plaintiff and defendants than [was] inevitable from the use of

13   jewel-encrusted bee forms in both."  *Id.* at 742.  Put differently, our court of appeals did not find

14   that the bee pins were not copyrightable.  Rather, it found that at a basic level the idea and

15   expression of a bee pin merge, and that was all that had been copied.

16           It may be possible to create a killer whale toy that bears only features essential for its

17   expression.  On the present record, however, defendant has not made a showing that plaintiffs

18   killer whale toys are so perfectly generic that they could carbon-copied without risk of

19   infringement.  Nor has defendant made such a showing regarding the other toys at issue.

20           **2.    AD-LINE'S ALLEGED INFRINGEMENT.**

21           Having determined that Alpi's works may be protected by copyright, the next question is

22   whether Ad-Line's works infringe.

23           "[W]hen the copyrighted work and the alleged infringement are both before the court,

24   capable of examination and comparison, non-infringement can be determined on a motion to

25   dismiss."  *Christianson v. West Pub. Co.*, 149 F.2d 202 (9th Cir. 1945).  "Judgment on the

26   pleadings may be granted where the facts asserted by the non-moving party in its pleadings —

27   including the attached works themselves — and all reasonable inferences from those facts, show

28

the absence of substantial similarity." *Identity Arts v. Best Buy Enter. Servs. Inc.*, No. 05-4656, 2007 WL 1149155, at *5 (N.D. Cal. Apr. 18, 2007) (Judge Phyllis Hamilton).

The Ninth Circuit uses the "extrinsic/intrinsic" infringement test to distinguish between permissible copying of ideas and impermissible copying of expression. *Mattel, Inc. v. MGA Enter., Inc.*, 616 F.3d 904, 913 (9th Cir. 2010).

> At the initial "extrinsic" stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable. For example, ideas, scenes a faire (standard features) and unoriginal components aren't protectable. When the unprotectable elements are "filtered" out, what's left is an author's particular expression of an idea, which most definitely is protectable.

> Given that others may freely copy a work's ideas (and other unprotectable elements), we start by determining the breadth of the possible expression of those ideas. If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is "thin" and a work must be "virtually identical" to infringe.

*Id.* at 913–914 (citations omitted).

Returning to the example of Alpi's cow, Alpi has made a *prima facie* showing of copyrightability sufficient to survive a motion to dismiss. For infringement, extrinsic analysis requires filtering out many elements of the work. For example, features like its general resemblance to a cow, that fact that it is white with black spots, and the presence of horns and other standard cow anatomy are removed from consideration. What remains is a "thin" copyright covering the particularized expression of this cow: the cartoonish thickness of its stubby legs, the specific pattern of black spots, the tilt of its head, and the particularized expression of its head, eyes, ears, body, snout, and hooves.

Given the thinness of Alpi's copyright on this toy — if any — the level of similarity required for infringing substantial similarity is high. The analysis instant ends here, however. Because of the parties' failure to lodge a verified set of exemplars, and because of the poor quality of the photographs in evidence, the record is inadequate to decide the issue of infringement at this time. In consequence, defendant's motion must be **DENIED**.

**CONCLUSION**

Defendant's motion for judgment on the pleadings is **DENIED**.  Please do not turn around and refile this same motion with exemplars.  The parties must complete discovery.  Then and only then will a summary judgment motion be entertained.

**IT IS SO ORDERED.**

Dated:   December 14, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

6